## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| ROBERT F. LODI | : | |
| DEBTOR | : | CASE NO. 05-48930-JBR |
| DAVID M. NICKLESS, PLAINTIFF, | : | |
| PLAINTIFF, | : | |
| v. | : | AP. NO. 06-4216 |
| PAULA LODI, | : | |
| DEFENDANT. | : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY**

**JUDGMENT**

This matter came before the Court on Defendant's Motion for Summary Judgment (Docket #21), the accompanying affidavit of the Defendant (Docket #22), the Plaintiff's Objection to Summary Judgment (Docket #40) and the Plaintiff's Cross-Motion for Summary Judgment as to Count II of the Complaint (Docket #41). The Plaintiff's Complaint contains three counts alleging preferences under 11 U.S.C. § 547(b), fraudulent transfers under Massachusetts General Laws Chapter 109A and 11 U.S.C. § 548(a)(1)(A) or (B) and seeks to bar any claims that Defendant has pending "repayment" of the transfers under 11 U.S.C. § 502(d).

**FACTS**

Robert F. Lodi ("Debtor") and Paula Lodi ("Defendant") have owned their residence as tenants by the entirety since April 25, 1996. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Exhibit 2 p.11) The Debtor and Defendant refinanced their

home on July 21, 2005, which, after payment of the first mortgage and costs associated with

closing, yielded approximately $50,000 in equity.  (Lodi Affidavit ¶¶ 8-10).  From the funds, the

Debtor paid his creditors $28,538.50, including $10,486.50 to pay off his auto loan.  (Lodi

Affidavit ¶¶11-12).  The Defendant paid her auto loan in the amount of $11,361.  (Lodi Affidavit

¶12).  The Debtor and the Defendant received the remaining $9,301 in proceeds by a check

payable to both.  (Lodi Affidavit ¶13).  The Defendant deposited the remaining funds in her own

bank account and paid certain household expenses with the majority of the sum.[1]  (Lodi Affidavit

¶14).  Because the Debtor did not have a checking account, the Defendant maintained a checking

account in her own name and paid the bills.  (Lodi Affidavit ¶4).  Since at least September 2003,

the Debtor contributed approximately $500 a week for payment of the mortgage and household

expenses and $370 a month for payment of his auto loan.  (Lodi Affidavit ¶4).

Between August 4, 2005 and September 8, 2006, the Debtor paid a total of $20,130.27 in

weekly payments to Defendant to assist in the payment of the mortgage and other household

expenses.  (Lodi Affidavit ¶¶4-5).

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on October

13, 2005.  The Defendant filed for divorce from the Debtor in November 2005 and in January

2006, the Debtor moved out and since that time has only been paying Defendant $327 per week

in child support.  (Lodi Affidavit ¶¶2, 16).  The Plaintiff seeks to recover the $11,361 expended

in payment of the Defendant's auto loan, the $9,301 deposited in Defendant's bank account, and

the $20,130.27 in weekly payments made between August 4, 2005 and September 8, 2006 on the

---

[1] $8,617.42 went to pay joint household expenses, $183.62 was paid to Debtor's creditors, and
$508.28 was paid Defendant's creditors.  (Lodi Affidavit ¶14).

theory that all of the payments were either fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) or

(B) or preferences under 11 U.S.C. § 547(b).[2]

## POSITIONS OF THE PARTIES

The Defendant argues that because the Debtor's creditors received more than half of the

equity from the refinance, the money paid to Defendant is not recoverable as it was part of the

share to which she was entitled.  The Plaintiff argues that because the Debtor and Defendant held

the property as tenants by the entirety, it does not follow that Defendant was entitled as a matter

of law to half the equity in the marital residence.  The Plaintiff argues that because the Defendant

filed for divorce in November, 2005, the Debtor may be entitled to more or less than 50% of the

equity depending on what the probate court decides based on an equitable division analysis.

The Plaintiff further argues that the $20,130.27 that Defendant received from Debtor in

weekly payments for household expenses and maintenance is a fraudulent transfer because the

Debtor did not receive "reasonably equivalent value" in exchange.

The Plaintiff also asserts that both the disposition of the refinance proceeds and the

weekly payments from Debtor to Defendant were preferences under 11 U.S.C. § 547.

## DISCUSSION

A party is entitled to summary judgment if there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Fed. R. Bankr.

P. 7056.  The moving party, bears the burden of demonstrating that no triable issue of fact exists.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the

burden shifts to the nonmoving party to introduce evidence of a genuine issue of material fact.

*FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir. 1990)

---

[2] To the extent that the Court finds the transfers unavoidable, the Plaintiff also seeks to bar
potential claims of Defendant under 11 U.S.C. § 502(d).

3

## A.  Fraudulent Transfer

The Plaintiff asserts that each transfer was fraudulent under 11 U.S.C. § 548(a)(1)(A) and

(B).  Section 548 of the Bankruptcy Code states in relevant part:

> **(a)** The Plaintiff may avoid any transfer (including any transfer to or for the
> benefit of an insider under an employment contract) of an interest of the debtor in
> property, or any obligation incurred by the debtor, that was made or incurred on
> or within 2 years before the date of the filing of the petition, if the debtor
> voluntarily or involuntarily—
>> **(A)** made such transfer or incurred such obligation with actual intent to
>> hinder, delay, or defraud any entity to which the debtor was or became, on
>> or after the date that such transfer was made or such obligation was
>> incurred, indebted; or
>> **(B)(i)** received less than a reasonably equivalent value in exchange for
>> such transfer or obligation; and
>> **(ii)(I)** was insolvent on the date that such transfer was made or such
>> obligation was incurred, or became insolvent as a result of such transfer or
>> obligation;
>> **(II)** was engaged in business or a transaction, or was about to engage in
>> business or a transaction, for which any property remaining with the
>> debtor was an unreasonably small capital;
>> **(III)** intended to incur, or believed that the debtor would incur, debts that
>> would be beyond the debtor's ability to pay as such debts matured; or
>> **(IV)** made such transfer to or for the benefit of an insider, or incurred such
>> obligation to or for the benefit of an insider, under an employment
>> contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

The Plaintiff also relies upon the Uniform Fraudulent Transfer Act (UFTA) embodied in

Chapter 109A of the Massachusetts General Laws.  To prevail under the UFTA, the Plaintiff

must prove that the transfers to the debtor were fraudulent, meaning that "the debtor made the

transfer…with actual intent to hinder, delay, or defraud any creditor of the debtor."  Mass. Gen.

Laws ch. 109A, § 5.

## 1.  Refinance Proceeds

Tenancies by the entirety are governed primarily by common law in Massachusetts.  In a

tenancy by the entirety, the husband and wife "are seised of the estate so granted as one person,

and not as ordinary joint tenants or tenants in common." *Coraccio v. Lowell Five Cents Savings Bank*, 415 Mass. 145, 148 (1992), quoting from *Morris v. McCarty*, 158 Mass. 11 (1893). Tenancies by the entirety created after February 11, 1980 are subject to Massachusetts General Laws Chapter 209, § 1, which provides that "a husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety." Mass. Gen. Laws. ch. 209, § 1. It does not follow, however, that "each party has an equal one-half interest in the property." *Coraccio*, 415 Mass. at 151. Instead, the statute guarantees each spouse an equal right to the whole. *Id.*

The tenancy by the entirety "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." *Campagna v. Campagna*, 337 Mass. 599, 605 (1958). A tenancy by the entirety is not subject to voluntary partition. Mass. Gen. Laws ch. 241, § 1.

In *In re Snyder*, 231 B.R. 437 (Bankr. D. Mass. 1999), in the context of an exemption claimed under 11 U.S.C. § 522(d)(1) and (5), a debtor contended that because he owned property with his non-debtor wife as tenants by the entirety, his interest only extended to half of the property's value. *Snyder*, 231 B.R. at 440. As a result, he claimed that an attachment by one of his creditors impaired his exemption and could be avoided under § 522(f)(1)(a). After a thorough examination of the law governing tenancies by the entirety in Massachusetts, Judge Kenner concluded that "insofar as the debtor spouse's creditors are concerned, the extent of the debtor's interest in the tenancy by the entirety is indeterminate until the tenancy is terminated." *Id.* at 444. The court entered a provisional order only partially avoiding the creditor's lien based on the assumption that upon the termination of the tenancy, the debtor's interest would extend to the entire property. *Id.* at 445. If, however, upon termination of the tenancy, the debtor's

interest was something less, the order was subject to reconsideration and the lien could be
avoided to a greater extent. *Id.*

The Bankruptcy Appellate Panel (BAP) agreed with the bankruptcy court's assessment of
the debtor's interest in the property as 100% of the value, but disagreed regarding the provisional
nature of the order. *In re Snyder*, 249 B.R. 40, 46 (B.A.P. 1st Cir. 2000). The Panel held that the
valuation of the debtor's interest should be "fixed and not subject to a possible subsequent
hearing when an event occurs which would terminate the tenancy by the entirety." *Id.* Such
"snapshot" valuations are commonly done in the bankruptcy process and consistent with the
principle of finality in order, which insures the debtor a fresh start. *Id.* The BAP also rejected
the debtor's contention that the value of the debtor's interest in the property should be
determined actuarially. *Id.* The Panel reasoned that "a hearing on a motion to avoid a lien
pursuant to section 522(f), much like a hearing on a motion for relief from automatic stay, should
be a summary proceeding susceptible to a quick and binding resolution." *Id.*

The First Circuit Court of Appeals held that Snyder had waived his argument that the
court should adopt an actuarial approach and affirmed the BAP. *In re Snyder*, 2 Fed. Appx. 46,
49 (1st Cir. 2001). Since *Snyder*, other bankruptcy courts have adopted its reasoning and valued
a debtor's interest in a tenancy by the entirety at 100% for purposes of § 522(f). *See In re
Strandberg*, 253 B.R. 584, 589 (Bankr. D.R.I. 2000); *In re Levinson*, 2007 WL 2122037, at *7
(Bankr. E.D.N.Y. 2007).[3] While the reasoning in *Snyder* may be applicable when it is the

---

[3] Judge Somma, in *In re O'Connell*, 334 B.R. 312 (Bankr. D. Mass 2005), expressed reservations
about the *Snyder* court's method of valuing a debtor spouse's interest in a Massachusetts tenancy
by the entirety for § 522(f) purposes. *O'Connell*, 334 B.R. at 315. Judge Somma recognized
that the test employed in *Snyder* is a bright line rule, but indicated that "because it values one
spouse's interest in a tenancy by the entirety without regard for how the tenancy is terminated –
something that is simply impossible under Massachusetts law – it seems not entirely faithful to
Massachusetts law." *Id.* at 315 n.6.

impairment of the debtor's exemption at issue, applying such reasoning in the case at hand would ignore the interest of the non-debtor spouse in the marital residence.

With respect to the treatment of the proceeds of the refinance on property held in a tenancy by the entirety, the treatment of proceeds from a condemnation of such property provides a helpful analogy.  The balance of the condemnation proceeds, representing the equity of redemption, "stands on the same footing as the realty" and is held by the parties as tenants by the entirety."  *Ronan v. Ronan*, 339 Mass. 460, 463 (1959).  "If husband and wife *cannot agree* on the disposition of the proceeds, they are placed on deposit with a financial institution and all interest is payable to the husband during their joint lives, with principal payable to the survivor."[4]  *In re Coombs*, 86 B.R. 314, 316-17 (Bankr. D. Mass. 1988) (emphasis added).  As with any tenancy by the entirety, the tenancy in the funds "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other."  *Campagna*, 337 Mass. at 605.  "In the case of personal property, the word 'transfer' should be substituted for the word 'deed.'  *Ronan*, 339 Mass. at 463.

Because the tenancy by the entirety continued in the proceeds from the refinance, the parties could agree as to the disposition thereof.  Although there may be instances in which the parties' agreement evidences an intent to hinder one spouse's creditors, that scenario is not present in the instant case where the Debtor's creditors received most of the value of the refinance.  If anything, the Defendant's creditors would have a claim against the Debtor's estate had the Defendant been insolvent or rendered insolvent by the allocation of the refinance

---

[4] A different result would have been reached had the tenancy by the entirety been created after February 11, 1980.  Both the husband and wife would be entitled to the interest during their joint lives.  Mass. Gen. Laws ch. 241, § 1; *In re Coombs*, 86 B.R. at 316, citing *Turner v. Greenway*, 391 Mass. 1002 (1984).

proceeds.  Here, the parties agreed to the disbursements as evidenced by the HUD settlement

statement from the closing, which required the signatures of both parties, as well as the check,

which was payable to both Debtor and Defendant and presumably had to be indorsed by both.

The parties' agreement and subsequent disposition of the money terminated the tenancy by the

entirety in the funds and determined the share of the proceeds to which each was entitled.

The Plaintiff's focus on equitable division of the marital estate is misplaced, because the

Defendant did not file for divorce until November 2005, after both the refinance and the Debtor's

petition for relief.  Massachusetts law provides that a court of the Commonwealth may order an

equitable distribution "upon divorce."  Mass. Gen. Laws. ch. 208, § 34.  Instead, the issue at

hand is the extent of a Debtor's interest in property owned by him and the non-debtor spouse as

tenants by the entirety at the time of a refinance.  The Debtor owned a 100% interest in the

property, but the Defendant also owned the same.

The Plaintiff's argument, if followed to its logical extreme, is that a debtor and non-

debtor spouse who hold property as tenants by the entirety are prevented from agreeing on the

distribution of proceeds from that property for as long as the statute of limitations remains open

under the Uniform Fraudulent Transfer Act.  This argument does not comport with the tenet of

finality or the need for a quick and binding resolution emphasized by the BAP in *Snyder* because

it leads to uncertainty as to each party's right to the proceeds.  *See Snyder*, 249 B.R. at 46.  It

would also mean that the bankruptcy case would have to remain open pending a determination

by a probate court any time a debtor spouse who owns property in a tenancy by the entirety with

a non-debtor spouse is also a party to a divorce action.  Moreover, it is difficult to reconcile such

a result with the language of 11 U.S.C. § 541(5)(B).  If a debtor's estate only acquires a property

interest in a non-debtor spouse's assets if such interest is agreed to in a property settlement or

awarded by a final divorce decree, and then only if the interest is acquired within 180 days of the filing of the bankruptcy petition, it is inconceivable that Congress intended bankruptcy cases to be held open for years simply because a debtor and non-debtor spouse own property in a tenancy by the entirety; especially when the proceeds of that property are used primarily to satisfy the debtor's obligations.

Additionally, with respect to the $9,301 deposited into the Defendant's account, the Plaintiff's argument that the transfer is fraudulent because the use of the funds was at Defendant's discretion is unavailing because it ignores the reality that over 90% of those funds went to pay joint obligations.

Finally, the Plaintiff has not evinced any facts to support his claims under both 11 U.S.C. § 548(a)(1)(A) or Chapter 109A of the Massachusetts General Laws that the disbursements of the refinance proceeds were made with the intent to "hinder, delay or defraud." To the contrary, the majority of the proceeds of the refinance were paid to Debtor's creditors.

## 2. Weekly Payments

The Plaintiff argues that the $20,130.27 that the Defendant received from the Debtor in weekly payments for household expenses and maintenance is also a fraudulent transfer because the Debtor did not receive "reasonably equivalent value" in exchange. The Court rejects the Plaintiff's suggestion that because Debtor moved out of the house in January, 2006, approximately four months after the payments ceased, the Court should undertake a valuation of the exact benefit derived by the Debtor as a result of each expense. The Debtor received a benefit in that he lived in the marital home at the time the maintenance was performed. Further, the Debtor continues to hold an interest in the property as a tenant by the entirety with Defendant

and will have an opportunity to address the equitable division of the marital home in the divorce

proceeding in the probate court. *See* Mass. Gen. Laws ch. 208, § 34.

As discussed with respect to the disbursement of the refinance proceeds, there are no

facts demonstrating that the weekly payments were made with the intent to "hinder, delay, or

defraud" a creditor or any other entity to which the Debtor was indebted.

### B.  Preferences

The Plaintiff has not established that the proceeds of the refinance or the $20,130.27 in

weekly payments constituted an avoidable preference under 11 U.S.C. § 547.  In order to

establish that a payment is a preference, the Plaintiff must establish that all of the elements of §

547(b) are met.  11 U.S.C. § 547.  Section 547(b) states that:

> **(b)** Except as provided in subsections (c) and (i) of this section, the trustee may
> avoid any transfer of an interest of the debtor in property--
>> **(1)** to or for the benefit of a creditor;
>> **(2)** for or on account of an antecedent debt owed by the debtor before such
>> transfer was made;
>> **(3)** made while the debtor was insolvent;
>> **(4)** made--
>>> **(A)** on or within 90 days before the date of the filing of the
>>> petition; or
>>> **(B)** between ninety days and one year before the date of the filing
>>> of the petition, if such creditor at the time of such transfer was an
>>> insider; and
>> **(5)** that enables such creditor to receive more than such creditor would
>> receive if--
>>> **(A)** the case were a case under chapter 7 of this title;
>>> **(B)** the transfer had not been made; and
>>> **(C)** such creditor received payment of such debt to the extent
>>> provided by the provisions of this title.

11 U.S.C. § 547(b).

The Defendant, as the moving party, bears the burden of establishing that there is no genuine

issue of material fact and that the moving party is entitled to a judgment as a matter of law.  Fed.

R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  The Defendant has established that the Defendant was

not a creditor of Debtor and that the payments were not on account of an antecedent debt,

therefore, the elements of § 547(b)(1) and (2) are not satisfied and the Defendant is entitled to

judgment as a matter of law.  The Defendant was entitled to the proceeds from the refinance as

she had a 100% interest in the property; therefore, the payment was not on behalf of an

antecedent debt.  Finally, the $20,130.27 in weekly payments by the Debtor were used to help

pay the mortgage and household expenses, not to satisfy a debt owed by Debtor to Defendant.

(Lodi Affidavit ¶¶ 4-5).

**Conclusion**

The Court hereby GRANTS Defendant's Motion for Summary Judgment, DENIES the

Plaintiff's Cross Motion for Summary Judgment on Count II and DISMISSES the Adversary

Proceeding.

Separate orders shall issue.


Dated: September 12, 2007          By the Court,


_____
Joel B. Rosenthal
United States Bankruptcy Judge